**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**Kuan Zhou**

      **v.**                            Case No. 07-cv-238-PB
                                           Opinion No. 2008 DNH 115

**Federal Bureau of**
**Investigation, Director, et al.**


**MEMORANDUM AND ORDER**

**I.   BACKGROUND**

Kuan Zhou, a thirty-three year old Chinese citizen, lives in Durham, New Hampshire.  He filed an I-485 application to adjust his status to become a lawful permanent resident at the Vermont Service Center of the United States Citizenship and Immigration Service ("USCIS") on March 23, 2005.  Zhou's application was transferred to USCIS's Texas Service Center in March 2007, but remains unadjudicated.  According to USCIS's online case status service, as of the filing of Zhou's complaint, the Texas Service Center was already processing I-485 applications that were filed in August of 2006, some eighteen months after Zhou filed his I-485 application.  His security investigation remains unfinished.

Zhou seeks an order from this court compelling the relevant agencies to complete his security investigation and adjudicate his I-485 application.  Defendants argue in a motion to dismiss that the court lacks subject matter jurisdiction and that the complaint fails to state a claim for relief.

## II.  <u>STANDARD OF REVIEW</u>

The standard that a district court must use in evaluating a challenge to its subject matter jurisdiction will vary depending upon the nature of the challenge.  Here, the motion to dismiss does not depend upon disputed facts.  Thus, dismissal for lack of subject matter jurisdiction will be warranted only if "the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003).

On a motion to dismiss for failure to state a claim, I accept as true the well-pleaded factual allegations of the complaint and draw all reasonable inferences therefrom in the plaintiff's favor. Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002).  Although the complaint "does not need detailed factual allegations," the allegations "must be enough to

raise a right to relief above the speculative level." Bell Atl.
Corp. v. Twombly, 127 S. Ct. 1955, 1965 (U.S. 2007); Parker v.
Hurley, 514 F.3d 87, 95 (1st Cir. 2008).  The recently-
promulgated Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (U.S.
2007), standard is more demanding than the "any set of facts"
standard that it superseded.  See id. at 1965.


### III.  **ANALYSIS**

The government first contends that 8 U.S.C. § 1252(a)(2)(B)
(ii) strips the court of jurisdiction to hear Zhou's claims.  It
alternatively argues that Zhou's complaint fails to state a
viable claim for relief both because the Administrative Procedure
Act ("APA") does not provide him with a right to sue[1] and because
his complaint in any event fails to allege sufficient facts to
support a claim under the APA.  I address each argument in turn.

---

[1] The government characterizes this argument as a challenge
to the court's subject matter jurisdiction.  Because the question
of whether the APA provides for judicial review of an agency's
action is not an issue of subject matter jurisdiction, see Air
Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 523
n.3 (1991) (noting that the judicial review provisions of the APA
are not jurisdictional); R.I. Dep't of Envtl. Mgmt. v. United
States, 304 F.3d 31, 40 (1st Cir. 2002) (analyzing issue as a
question of whether a cause of action exists under the APA),
however, I have reframed the government's argument and analyzed
it under Fed. R. Civ. P. 12(b)(6).

**A.    Whether 8 U.S.C. § 1252(a)(2)(B)(ii) Strips this Court of Jurisdiction**

The government argues that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this court of jurisdiction to hear any case challenging the pace at which USCIS decides adjustment of status applications.  In relevant part, § 1252(a)(2)(B) states:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B).

Importantly, this jurisdictional bar does not cover *all* discretionary decisions or actions. Aguilar v. U.S. Immigration & Customs Enforcement Div., 510 F.3d 1, 20 (1st Cir. 2007); Cho v. Gonzales, 404 F.3d 96, 99-100 (1st Cir. 2005); see also, e.g., Alaka v. Attorney Gen., 456 F.3d 88, 95-96 (3d Cir. 2006); Zhao v. Gonzales, 404 F.3d 295, 302 (5th Cir. 2005); Spencer Enters. v. United States, 345 F.3d 683, 690 (9th Cir. 2003).  Rather, it applies only to decisions or actions "the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).  Accordingly, courts

-4-

must "engage in a precise reading of both the agency decision and the petition" to determine whether the jurisdictional bar applies.  Cho, 404 F.3d at 100.  "If a statute does not explicitly specify a particular authority as discretionary, section 1252(a)(2)(B)(ii) does not bar judicial review of an ensuing agency action."  Aguilar, 510 F.3d at 20.

In this case, Zhou has applied for an adjustment of status to become a lawful permanent resident pursuant to 8 U.S.C. § 1255.  Section 1255(a) expressly grants discretionary authority to the Secretary of Homeland Security[2] to grant or deny such an adjustment request.  8 U.S.C. § 1255(a).  The statute does not separately specify, however, that the Secretary has discretionary authority to withhold adjudication of an adjustment of status request or to otherwise delay the pace of the adjudication process.  Instead, discretion with respect to the timing of a decision on an adjustment of status application must be inferred from the discretion that is explicitly granted to the Secretary to approve or deny the application.

---

[2] The text of § 1255(a), as enacted, gives the Attorney General this authority, but the authority has since been transferred to the Secretary of Homeland Security.  See 6 U.S.C. § 271(b)(5); 6 U.S.C. § 557.

The government argues that the explicit grant of discretion in § 1255(a) to approve or deny an adjustment of status application also qualifies as a specification of discretion to withhold or delay the adjudication of an adjustment of status request.  In making this argument, the government appears to endorse the reasoning employed by a number of district courts, all but one of which come from outside the First Circuit.[3]  See, e.g., Touarsi v. Mueller, 538 F. Supp. 2d 447, 451-52 (D. Mass. 2008); Virelles v. Gonzalez, No. 07-21687-CIV, 2007 WL 2979866, at *3 (S.D. Fla. Oct. 11, 2007); Sharif v. Chertoff, 497 F. Supp. 2d 928, 932 (N.D. Ill. 2007); Zhang v. Chertoff, 491 F. Supp. 2d 590, 593 (W.D. Va. 2007); Serrano v. Quarantillo, No. 06-cv-5221, 2007 WL 1101434, at *3 (D.N.J. Apr. 9, 2007); Safadi v. Howard, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006).

I decline to adopt the government's reasoning because it is inconsistent with First Circuit precedent.  Cho v. Gonzales, 404 F.3d 96 (1st Cir. 2005), is instructive.  In Cho, the plaintiff initially received conditional permanent residency on the basis

---

[3] Although it was decided too recently to be reflected in the briefs, Touarsi v. Mueller, 538 F. Supp. 2d 447 (D. Mass. 2008), holds that § 1252(a)(2)(B)(ii) precludes review of the timing of USCIS's processing of adjustment of status applications.  For the reasons discussed below, however, I find the Touarsi court's analysis unconvincing.

of her marriage to a U.S. citizen.  404 F.3d at 97.  After the
couple divorced, the plaintiff applied for a hardship waiver to
remove the conditionality of her permanent residency.  Id.  The
Immigration and Nationality Act ("INA") gave the Attorney General
discretion to grant or deny such a waiver so long as the
petitioner met certain requirements specified in the statute.
Id. at 98; see also 8 U.S.C. § 1186a(c)(4).  Ultimately, the
Attorney General denied the waiver on the ground that the
plaintiff failed to meet the statutory requirement of having
married in good faith.  Cho, 404 F.3d at 98.  In response to the
plaintiff's challenge to this determination, the First Circuit
held that the relevant "decision or action" for § 1252(a)(2)(B)
(ii) purposes was not the Attorney General's ultimate decision to
deny the hardship waiver, but rather the underlying finding that
the plaintiff failed to establish that she married in good
faith.[4]  Id. at 99.  Thus, § 1252(a)(2)(B)(ii) could only strip

_____

        [4] As the Cho court pointed out, if Congress had intended to
impose a broader jurisdictional bar to apply in this
circumstance, "it is hard to see why it would not have said so
more clearly and categorically, using language such as that in,
for example, IIRIRA [Illegal Immigration Reform and Immigrant
Responsibility Act of 1996] § 309(c)(4)(G) ('[T]here shall be no
appeal permitted in the case of an alien who is inadmissable or
deportable by reason of having committed [certain criminal
offenses]') . . . ."  Cho, 404 F.3d at 100.

the court of jurisdiction over the plaintiff's claim if some language in the INA explicitly committed the good-faith marriage determination to the Attorney General's discretion.  Id. at 101.

Under Cho, then, the relevant decision or action for § 1252(a)(2)(B)(ii) purposes is not the ultimate decision to grant or deny relief, but the underlying decision or action that actually gave rise to the petitioner's grievance.  See id. at 99. As applied to Zhou's situation, this means that the relevant action or inaction is not the ultimate grant or denial of Zhou's adjustment of status application, but rather the Secretary's alleged failure to act on the application in a timely fashion. Nothing in the INA explicitly commits the pace of adjudication to the discretion of the Secretary or explicitly gives the Secretary discretion to withhold adjudication.  Accordingly, the pace of adjudication is outside the reach of the jurisdictional bar.  See id.

In addition to being supported by First Circuit precedent, this construction of the jurisdictional bar is consistent with the overall statutory scheme.  If § 1252(a)(2)(B)(ii) reached as broadly as the government contends, then USCIS could, without fear of judicial intervention, flatly refuse to carry out its

statutory duty to adjudicate adjustment of status petitions.
Such a result would conflict with the congressional intent,
embodied in the APA, to allow courts to intervene when agencies
fail to carry out their mandatory duties in a reasonable period
of time.  See 5 U.S.C. § 555(b) ("With due regard for the
convenience and necessity of the parties or their representatives
and within a reasonable time, each agency shall proceed to
conclude a matter presented to it.").  It would also conflict
with the strong general presumption in favor of judicial review
of administrative action.  See INS v. St. Cyr, 533 U.S. 289, 298
(2001).

Finally, the conclusion I reach is consistent with a number
of recent decisions by other district courts, including the
majority of district courts in the First Circuit that have
considered the issue.  See Vorontsova v. Chertoff, No. 07-10426-
RGS, 2007 WL 3238026, at *2 (D. Mass. Nov. 2, 2007); Aziz v.
Chadbourne, No. 07-11806-GAO, 2007 WL 3024010, at *2 (D. Mass.
Oct. 15, 2007); Tang v. Chertoff, 493 F. Supp. 2d 148, 153 (D.
Mass. 2007); see also, e.g., Ceken v. Chertoff, 536 F. Supp. 2d
211, 215 (D. Conn. 2008); Lindems v. Mukasey, 530 F. Supp. 2d
1044, 1046 (E.D. Wis. 2008); Belegradek v. Gonzales, 523 F. Supp.

2d 1364, 1366 (N.D. Ga. 2007); Alkeylani v. Dep't of Homeland

Sec., 514 F. Supp. 2d 258, 262-64 (D. Conn. 2007); Dong v.

Chertoff, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007); Liu v.

Novak, 509 F. Supp. 2d 1, 7 (D.D.C. 2007); Cao v. Upchurch, 496

F. Supp. 2d 569, 573-74 (E.D. Pa. 2007).

Accordingly, because the INA does not expressly grant

discretionary authority to any agency to withhold or delay a

decision on an adjustment of status application, § 1252(a)(2)(B)

(ii) does not strip this court of jurisdiction to review Zhou's

complaint.[5]

**B.    Whether Zhou Asserts a Cognizable Cause of Action**

Zhou asserts that his claims arise under the mandamus

---

[5] The government alternatively argues that 8 C.F.R. §
103.2(b)(18), which gives agency officials the discretion to
withhold adjudication in six-month increments to allow time for
extended investigations, is an express grant of discretionary
authority that triggers the jurisdictional bar.  The First
Circuit has held, however, that § 1252(a)(2)(B)(ii) "does not
limit our jurisdiction when [the relevant agency] exercises
discretion that is not specified anywhere in the statutory
subchapter, but rather derives entirely from regulations
promulgated by the Attorney General under the statute."
Alsamhouri v. Gonzales, 484 F.3d 117, 122 (1st Cir. 2007).
Because the discretionary process described in 8 C.F.R. §
103.2(b)(18) is merely a regulation promulgated by the Secretary
that is not specified anywhere in the statutory subchapter, it
does not trigger § 1252(a)(2)(B)(ii).  Id.

statute, 28 U.S.C. § 1361; the APA, 5 U.S.C. §§ 551 et seq.; and

the Declaratory Judgment Act, 28 U.S.C. § 2201.[6]  Because I find

that Zhou has a cognizable claim under the APA, I need not

consider Zhou's other asserted bases for his claim.

       The APA authorizes suit by, inter alia, a person who is

adversely affected by an agency withholding or delaying a

required action.  Norton v. S. Utah Wilderness Alliance (SUWA),

542 U.S. 55, 61-62 (2004).  Such a suit may proceed only if the

"plaintiff asserts that an agency failed to take a *discrete*

agency action that it is *required to take*."  Id. at 64 (emphasis

in original); 5 U.S.C. § 706(1).  The government argues that

because there is no deadline by which USCIS must complete its

review of Zhou's application, USCIS has no duty *ever* to complete

the review; alternatively, the government contends that if such a

duty exists, it is too unbounded for a court to enforce.  Neither

argument has merit.

       As to the first argument, nothing in the INA or the relevant

regulations suggests that it would be a proper exercise of

_____

       [6] As noted earlier, although the government characterizes
this as an issue of subject matter jurisdiction, I have reframed
the government's argument as being that Zhou is unable to
maintain a cause of action under the APA and I analyze it under
Fed. R. Civ. P. 12(b)(6).

discretion for USCIS to refuse to adjudicate an applicant's adjustment of status application.[7]  Rather, the statutes and regulations assume that an actual decision -- that is, an approval or denial of the application -- will be made on each application.  See, e.g., 8 C.F.R. § 245.2(a)(5) (describing procedures for approving or denying an application for adjustment of status, but giving no procedure for deciding never to act upon the application).

In this context, the absence of an explicit deadline for adjudication does not eliminate USCIS's duty to adjudicate applications.  Instead, it forces a reviewing court to fall back on the APA's general requirement, contained in 5 U.S.C. § 555(b), that "[w]ith due regard for the convenience and the necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Accordingly, USCIS has a duty to adjudicate Zhou's application "within a reasonable time."  See 5 U.S.C. § 555(b).

---

[7] It is true that 8 C.F.R. § 103.2(b)(18) allows USCIS to withhold adjudication in six-month increments to permit further investigation.  Such withholding is, however, allowed only for a specific purpose and for limited periods of time.  It is not a blanket authority to avoid making a final decision indefinitely or for any reason.

To support its contention that no duty exists at all, the government relies on Norton v. Southern Utah Wilderness Alliance (SUWA), 542 U.S. 55 (2004), in which the Supreme Court held that the APA did not authorize a suit against the Bureau of Land Management for that agency's failure to implement various elements of its non-binding land use plan.  See 542 U.S. at 71. The analogy between Zhou's case and SUWA is unconvincing, however, because the result in that case hinged on the aspirational nature of the land use plan.  See id. ("[A] land use plan is generally a statement of priorities; it guides and constrains actions, but does not (at least in the usual case) prescribe them.").  The Secretary's duty to adjudicate adjustment of status applications is not aspirational.  Thus, SUWA is distinguishable.

The government's fallback argument -- that even if it does have some duty to adjudicate Zhou's application, the general directive of § 555(b) is too vague for a court to enforce -- also fails.  The government relies on Heckler v. Chaney, 470 U.S. 821 (1985), which states that judicial review may be precluded when "a court would have no meaningful standard against which to judge the agency's exercise of discretion."  Id. at 830.  The

government incorrectly focuses on Heckler's "no meaningful
standard" language, however, without considering the meaning of
the phrase "against which to judge the agency's exercise of
discretion."  Heckler is similar to SUWA in that the Heckler
plaintiffs sought to challenge an agency's *discretionary refusal*
to initiate an enforcement action.  Heckler, 470 U.S. at 828.
The Heckler court declined to exercise jurisdiction based not on
questions of timing, but because of the more basic "general
unsuitability for judicial review of agency decisions to refuse
enforcement," which made it impossible to judge whether or not
the agency's discretionary decision not to initiate an
enforcement action was appropriate.  Id. at 831.

    In this case, however, the inaction at issue is not a
discretionary refusal to initiate an enforcement action.  It is
USCIS's alleged failure to carry out its duty to adjudicate
Zhou's application for adjustment of status within a reasonable
time.  Because USCIS may exercise discretion only over how and
when it will adjudicate the application, not whether it will
adjudicate the application at all, Heckler is inapposite.  For
actions that an agency has no discretion to refuse to carry out,
but may complete on an indeterminate schedule, the courts have

-14-

been more willing to inquire into whether the agency has unreasonably delayed such action.  See, e.g., Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (remanding to the district court for "a full and fresh evaluation" of whether the Bureau of Indian Affairs unreasonably delayed the adjudication of a petition for tribal recognition); Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999) ("[I]f an agency has no concrete deadline establishing a date by which it must act . . . a court must compel only action that is delayed unreasonably.").

The process of deciding what constitutes an "unreasonable delay" is often a complex and fact-intensive task.  See Mashpee Wampanoag Tribal Council, 336 F.3d at 1100 ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."); Cobell v. Norton, 240 F.3d 1081, 1096 (D.C. Cir. 2001) (describing a fact-intensive multi-factor test that the D.C. Circuit considers in reviewing unreasonable delay claims).  But it is the kind of task that courts can and do undertake.  Accordingly, I find that under the APA, I may consider whether USCIS's delay in processing Zhou's

-15-

adjustment of status application was so lengthy and unjustified
that it became unreasonable.  See Vorontsova, 2007 WL 3238026, at
*2; Aziz, 2007 WL 3024010, at *3; Tang, 493 F. Supp. 2d at 155-
56; see also, e.g., Ceken, 536 F. Supp. 2d at 217; Lindems, 530
F. Supp. 2d at 1047; Belegradek, 523 F. Supp. 2d at 1368;
Alkeylani, 514 F. Supp. 2d at 265; Liu, 509 F. Supp. 2d at 8-9;
Cao, 496 F. Supp. 2d at 576.  But see Dong, 513 F. Supp. 2d at
1165 (finding jurisdiction under the APA but not tracing its
source to the "unreasonable delay" rule).

**C.   Whether Zhou Has Adequately Alleged an Unreasonable Delay**

I now turn to the question of whether Zhou's allegations of
unreasonable delay are sufficient to raise his right to relief
"above the speculative level."  See Bell Atl. Corp., 127 S.Ct. at
1965.

Congress has provided little guidance here, but it did set
an aspirational goal that immigration benefit applications
should, as a general rule, be processed within 180 days of
filing.  8 U.S.C. § 1571(b).  Additionally, 8 C.F.R. §
103.2(b)(18) specifies a process by which USCIS may temporarily
withhold adjudication to allow for completion of an
investigation.  Under this process, the district director may

-16-

authorize up to two six-month delays and the regional commissioner may authorize an additional six-month delay. Further six-month delays are permissible only if the Associate Commissioner of Examinations and the Associate Commissioner of Enforcement agree that they are necessary to allow for completion of the investigation. 8 C.F.R. § 103.2(b)(18).  Taken together, this means that an application may be delayed for up to two years without the approval of anyone above the regional commissioner level.  This suggests that a delay of two years or less is unlikely to be *per se* unreasonable, but it does not offer much aid in evaluating longer delays like the one in the case at bar.

In determining what constitutes an unreasonable delay, other courts have examined such factors as the length of the delay, the reasons for the delay, the relative fault of the parties in causing the delay, the complexity of the matter under review, the interest of the plaintiff in expediting the matter, and any interests of the agency that would be negatively affected by expediting the matter.  See, e.g., Ceken, 536 F. Supp. 2d at 217 ("In order to determine the reasonableness of the delay, the court must look to the source of the delay -- e.g., the complexity of the investigation as well as the extent to which

-17-

the defendant participated in delaying the proceeding." (internal quotations omitted)); Lindems, 530 F. Supp. 2d at 1047 ("I may consider such factors as the length of delay, the complexity of the matter under review and the relative fault of the parties in causing the delay."); Belegradek, 523 F. Supp. 2d at 1368 ("[C]ourts have applied a rule of reason, considering: (1) the source of the delay, (2) the complexity of the investigation, (3) whether any party participated in delaying the proceeding, (4) the nature and extent of the interests prejudiced by the delay, and (5) whether expediting action on agency activities will have an adverse effect on higher or competing priorities.").

Within the First Circuit, district courts have focused primarily on the length of the delay.  See Vorontsova, 2007 WL 3238026, at *3 ("[A] twenty-one month delay in adjudicating Vorontsova's application is not *per se* unreasonable."); Aziz, 2007 WL 3024010, at *2 ("As a matter of law, the agency cannot be held to have 'unreasonably delayed' action if the application has not been processed within two months after filing.  That is well within the aspirational time limit expressed by Congress, as well as those limits implied by cases that have found unreasonable delays."); Tang, 493 F. Supp. 2d at 157-58 ("It has taken over

four years and counting for the government simply to acknowledge
. . . that there are no FBI records pertaining to Tang.").

In this case, Zhou's application has been pending for
approximately three years (he first applied for adjustment of
status in March 2005).  As of July 2007, this put his application
approximately eighteen months behind other I-485 applications
being processed at the Texas Service Center.  This is a longer
delay than those in cases that courts have dismissed at the
12(b)(6) stage.  See Vorontsova, 2007 WL 3238026, at *3 (granting
government's motion to dismiss where applicant experienced a
delay of slightly less than two years); Aziz, 2007 WL 3024010, at
*3 (granting government's motion to dismiss where applicant
experienced a two-month delay).  Additionally, it is within the
range of delays that have survived motions to dismiss.  See,
e.g., Belegradek, 523 F. Supp. 2d at 1368 (denying government's
motion to dismiss where applicant experienced a two-year delay);
Alkeylani, 514 F. Supp. 2d at 266 (denying government's motion to
dismiss where applicant experienced a three-year delay); Cao, 496
F. Supp. 2d at 577 (granting plaintiff's motion for summary
judgment where applicant experienced a four-year delay); Tang,
493 F. Supp. 2d at 157 (denying government's motion to dismiss

-19-

where applicant experienced a four-year delay).  In addition to
the absolute length of the delay, it is noteworthy that Zhou's
application has fallen eighteen months behind the processing of
other I-485 applications.  Although other factors may be relevant
for summary judgment purposes,[8] Zhou's time-based allegations are
alone sufficient to raise his claim above the level of mere
speculation.

The government points to two general policy concerns that,
it argues, should nevertheless prevent Zhou's case from
proceeding further.  The first is that allowing some applicants
to sue for speedier adjudication would simply reshuffle the line
without speeding up the process as a whole.  The second, related
concern is that such reshuffling would do nothing to alleviate
the underlying problem of limited agency resources that leads to
long processing times in the first place.  Although I am
sympathetic to USCIS's predicament, nothing before me indicates
that advancing the relatively small number of applicants who have
experienced multi-year delays to the head of the line would
seriously interfere with higher or competing priorities.  As

---

[8] For example, nothing presently before me sheds light on
the reasons for the delay or the relative fault of the parties in
causing the delay.

-20-

other courts have noted, the fact that the relevant agencies lack
sufficient resources to timely process all adjustment of status
applications is ultimately a problem for the political branches,
not the courts, to solve.  It is not the aggrieved applicants who
have created this problem, and it would not be appropriate for
the courts to shift the burdens of this political failure onto
the shoulders of individual immigrants.  See Tang, 493 F. Supp.
2d at 158.


## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss
(Doc. No. 7) is denied.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


June 12, 2008

cc:  Randall A. Drew, Esq.
     Seth R. Aframe, Esq.